# Rector *v.* The State.

## *Murder.*

(Decided December 17, 1914.   66 South. 857.)

1. *Grand Jury; Selection; Conclusiveness; Statutes.*—Under Acts 1909, p. 305, the presumption is that a person whose name is in the jury box, possesses the qualifications prescribed by law, and the trial court is under no duty to ascertain the general qualifications of jurors so drawn to constitute the grand jury.

2. *Same.*—In the absence of evidence offered at the time the grand jury was organized that the persons organized as a grand jury did not possess the qualifications prescribed by law, it was competent for the court to enter an order that they were qualified on the presumption arising from the fact that their names were drawn from the jury box in accordance with acts 1909, p. 305.

3. *Same; Time of Drawing; Number.*—The provisions of Acts 1909, p. 305, as to the time of drawing the regular jurors and the number to be drawn, are merely directory, and where the names of the grand jurors are drawn by the court as designated by the act, a mere failure to comply strictly with the provisions is not grounds for a motion to quash the indictment, or as a basis for a plea in abatement, in view of the provisions of sections 23 and 29 of said act.

4. *Indictment and Information; Plea in Abatement; Grounds.*—Under section 23, Acts 1909, p. 305, a plea in abatement to an indictment is demurrable where it is so amended as to strike out grounds raising the point that the persons constituting the grand jury were not drawn by those authorized by law to draw them.

5. *Same; Quashing; Grounds.*—Under section 23, Acts 1909, p. 305, an indictment charging murder cannot be quashed on the ground that one of the grand jurors returning the indictment was related to the deceased.

6. *Homicide; Evidence; Res Gestae.*—A statement by defendant just before the fatal encounter that he would go to where decedent and his brother were wrestling, a short distance away, was a part of the res gestæ and admissible as such.

7. *Same; Proof of Death.*—It is incumbent on the state to show that the wounds inflicted upon deceased by defendant caused his death.

8. *Same.*—As relevant to prove death caused by the wound, it was competent to show that after defendant had inflicted the wounds decedent laid down in the sand and was carried from there to a house of a third person, and from there to a city and was brought back the following day dead.

9. *Same.*—Where it was not controverted that deceased died from wounds inflicted by defendant, it was not error, or if error was

harmless, to permit a physician to testify as to the nature and character of the wounds.

10. *Same.*—Where a homicide was committed in the presence of several persons, all that was said by those present at the place of the difficulty immediately before the fatal rencounter and at the place where it occurred, was a part of the res gestæ, and admissible to illustrate the conduct of defendant.

11. *Same.*—A declaration by a decedent that he did not desire to prosecute defendant was not of the res gestæ and not admissible.

12. *Same; Dying Declarations.*—Where a physician told deceased shortly after the infliction of the wounds, from which deceased died next day, that he was in a bad condition, and asked him to make a statement, such statement was not admissible as a dying declaration, as there was no testimony that deceased was under a sense of impending dissolution.

13. *Same; Self-Defense.*—Where defendant relied on a prior assault made by deceased on him, it was competent to show that decedent had recently been ill, in connection with the other evidence, upon the question whether deceased assaulted defendant, and if so to determine the character and nature thereof.

14. *Same; Threats.*—Threats by a defendant against a deceased are admissible to show malice, and the fact that they were made more than two years before the killing does not render them inadmissible.

15. *Same; Degree*—Where the indictment charges murder in the second degree, defendant may be convicted of any degree of felonious homicide other than a murder in the first degree.

16. *Same; Manslaughter.*—Where defendant intentionally committed an assault which in its nature was calculated to produce death, and death ensued, he was guilty of manslaughter in the first degree, although he did not intend to kill deceased.

17. *Same; Instruction; Self-Defense.*—A charge asserting that if defendant was free from fault in bringing on the difficulty, that he was being assaulted by deceased and others in such a way as to create in his mind the belief that he was in danger of losing his life, or of suffering great bodily harm, he could strike in self-defense. even to the taking of the life of his assailant, was properly refused where there was nothing in the evidence to authorize even an inference that any other person than deceased assaultd him.

18. *Same.*—Charges on self-defense which ignore defendant's duty to retreat, under the facts in this case, were properly refused.

19. *Same.*—A charge asserting that if the jury have a reasonable doubt as to whether defendant acted in self-defense in killing decedent they cannot find him guilty, submitted to the jury the question as to what constitutes self-defense, and was properly refused.

20. *Same; Evidence.*—Where the evidence was sufficient to sustain a conviction of any degree of homicide less than murder in the first degree, it was proper to refuse a charge stating that unless defendant was guilty of murder in the second degree he was not guilty of any offense.

21. *Same.*—Where the evidence justified a conviction of any degree of homicide less than murder in the first degree by reason of the

[Rector v. The State.]

infliction on deceased of fatal wounds by defendant, a charge assert-ing that defendant could not be found guilty of assault and battery was properly refused.

22. *Criminal Law; Venue; Evidence.*—A defendant cannot complain at the refusal of an affirmative instruction for want of proof of venue where the failure to prove venue was not called to the attention of the trial court as required by rule 35, Circuit Court Practice.

23. *Same.*—Where the evidence showed that the difficulty occurred within a mile and a quarter of Vernon, which is the county seat of Lamar county, the jury was authority to find that the offense was committed in that county without any specific proof on that subject.

24. *Appeal and Error; Harmless Error; Motion to Exclude.*—In the absence of a motion to exclude the previous statement of a witness, the error, if any, in permitting the witness to repeat such previous statement, was not prejudicial.

25. *Same.*—Where witnesses testified to the bad character of de-fendant, but without limiting it to a time prior to the offense charged, instructions by the court so limiting the testimony, robbed it of any error or prejudice to the defendant.

26. *Witnesses; Examination and Cross.*—While a defendant may show that a state's witness was intoxicated at the time of the com-mission of the offense charged, and may show the degree of such intoxication, it is not competent for him to show that the witness had been subsequently indicted for public drunkenness.

27. *Same; Leading Question.*—Leading questions are allowable on cross-examination under the sound discretion of the trial court.

28. *Same; Competency.*—A witness who has lived in the community in which defendant has lived for forty-five years, and who has known defendant all his life, and knew his general character in the com-munity, was competent to testify that defendant's reputation for truth and veracity was bad, and that from his reputation he would not believe him under oath, since the terms "general character" and "general reputation" are synonymous or interchangeable as applicable to the qualifications of a witness to testify to the general character of another.

29. *Charge of Court; Argumentative Instructions.*—Charges assert-ing that if there are two reasonable constructions which can be given to facts proven, one favorable and the other unfavorable to defend-ant, the jury should accept that which is favorable rather than that which is unfavorable, are not only argumentative, but are also invasive of the province of the jury.

30. *Same; Singling Out Testimony.*—The charge asserting that defendant was a competent witness, and that his testimony must be considered as the testimony of other witnesses, and cannot be ignored, and if his testimony be reasonable, his manner indicative of the truth, and that his statements are not shown by other testimony to be false, the jury must accept his testimony, is properly refused for singling out and giving undue prominence to a part of the testimony.

APPEAL from Lamar Circuit Court.

Heard before Hon. BERNARD HARWOOD.

Jim Rector was convicted of manslaughter, and he appeals. Affirmed.

Defendant was indicted for unlawfully and with malice aforethought killing Jim Wright by cutting him with a knife, but without premeditation or deliberation. Motion was made to quash the indictment on various grounds, among them being that the grand jurors who were impaneled and who returned said true bill against this defendant, according to the records of this court, did not constitute, nor were they properly drawn as, grand jurors as required by law in such case, and because the judge failed before the adjournment of the spring term of the court to draw from the jury box in open court the names of not less than 50 persons which were to supply the grand and petit juries for this term of court; and because the record shows that the judge qualified the jury as follows:

"And the court ascertained, ordered, and adjudged that of the persons named in said venire and who had not been excused, the following named persons possessed all the qualifications required by law as grand and petit jurors. The names of said jurors possessing said qualifications are as follows: (Here follows the names of 18 jurors.) The court then ordered that the clerk write on separate slips of paper the names of all jurors in attendance upon the court, and who had not been excused, and to place each of said names in a hat, and the clerk obeyed such order. Thereupon the presiding judge of the court drew from said hat in open court the names of 18 qualified jurors. Said 18 persons so drawn are to compose the grand jury for the first week, and are as follows: (Here follows the same 18 names.) The said above-named persons being the first 18 names drawn from the said hat, and being adjudged by the court to possess all the qualifications required by law for grand

jurors, (here follows appointment of foreman, etc.)."

The plea in abatement was based on the same grounds as was the motion to quash. The facts sufficiently appear from the opinion of the court.

The following charges were refused to defendant:

(1) Unless you believe beyond all reasonable doubt that defendant intended to take the life of Jim Wright when he cut him, you cannot find defendant guilty. (2) If the jury believe from the evidence that defendant was free from fault in bringing on the difficulty, that he was being assaulted by deceased and other parties in such manner as created in the mind of defendant the belief that he was in danger of losing his life or of receiving great bodily harm, then he had a right to strike in self-defense, even to the taking of the life of the assailant, and that he used no more force than was necessary to repel the attack, then you cannot convict defendant of any offense. (3) Under the evidence in this case, you cannot find defendant guilty of murder in the second degree. (4) Same as to manslaughter in the second degree. (5) Same as to manslaughter in the first degree. (6) Affirmative charge as to murder in the second degree. (7) If you have a reasonable doubt as to whether or not defendant acted in self-defense, you cannot find defendant guilty. (8) It is a well-settled rule of law that if there be two reasonable constructions which can be given the facts proven, one favorable and the other unfavorable to defendant, it is the duty of the jury to accept that which is favorable, rather than that which is unfavorable. (9) You cannot convict defendant unless you believe from the evidence that defendant cut, shot, or killed the deceased unlawfully and with malice aforethought. (10) Defendant is a competent witness in his own behalf, and his testimony is to be considered and weighed as the testimony of other wit-

nesses, and the jury has no right to ignore or discard his testimony because he is the defendant, and, if his testimony be reasonable, his manner of testifying indicative that he is telling the truth, and if his statements are not shown by other testimony to be false, and especially if his statement of the facts is supported and corroborated by other evidence, the jury should accept his testimony and find a verdict accordingly. (11) Under the evidence in this case, you cannot find defendant guilty of assault and battery. (12) Same as to manslaughter in the first degree.

NESMITH & THOMPSON, and A. H. CARMICHAEL, for appellant. The court erred in overruling motion to quash the indictment, and in failing to ascertain the qualifications of the grand jurors which returned the indictment.—Acts 1909, p. 206. The court erred in sustaining demurrers to the plea in abatement.—*Tucker v. State,* 152 Ala. 1. The court erred in refusing to permit defendant to show that deceased said just after the difficulty "if I die, let Jim Rector go."—*Way v. State,* 155 Ala. 52; *Plant v. State,* 140 Ala. 52; *Collins v. State,* 138 Ala. 57. The court erred in not limiting the testimony of the witnesses as to the defendant's character to a time prior to the offense charged.—*Robertson v. State,* 59 South. 231. Counsel discuss other assignments of error relative to evidence, but without further citation of authority. Charge 1 should have been given.—*Ward v. State,* 96 Ala. 100. Charge 2 should have been given.—*Bluett v. State,* 161 Ala. 14. Charges 3, 4, 6, 11 and 12 should have been given, as there was no proof of the killing having occurred in Lamar county.—*Childs v. State,* 55 Ala. 28; *Cawthorn v. State,* 63 Ala. 158; *Tidwell v. State,* 70 Ala. 33; *Justice v. State,* 99 Ala. 180; *Kimbrell v. State,* 165 Ala. 118; sec. 7140, Code 1907.

R. C. BRICKELL, Attorney General, and T. H. SEAY, Assistant Attorney General, for the State. Counsel discuss the errors assigned and argued with the insistence that there is no error in the record and proceedings, but cite no authority in support of their insistence.

BROWN, J.—The law (Acts Sp. Sess. 1909, pp. 305-320) imposes upon the jury commissioners of the county the duty of preparing a jury roll, which must contain the name of every male citizen of the county, not specifically exempt, possessing the prescribed qualifications requisite to jury service. The statute provides for a clerk, and contemplates that he shall perform the clerical labors of the commission, keep its records, and certify to their contents.

"To the end that every male citizen possessing the prescribed qualifications and not exempt may be enrolled, and none other, the commission may summon witnesses, administer oaths, and take testimony touching the qualifications of any person residing in the county. The jury roll is the evidence of the commission's judgments. The determination of the qualifications of the prospective jurors involves the judicial function. 'Whenever the law vests a person with power to do an act and constitutes him a judge of the evidence on which the act may be done, and at the same time contemplates that the act is to be carried into effect through the instrumentality of agents, the person thus clothed with power is invested with discretion, and is quoad hoc a judge.'—23 Cyc. 504."—Nelson v. State, 182 Ala. 449, 62 South. 190.

Upon the completion of the jury roll, the commission is required to transcribe the names appearing on the roll on plain white cards all of the same size and texture, showing the place of residence and occupation; and

these cards are placed in the jury box, and none other. When the name of a person is drawn from the jury box for jury service, the presumption of the law is that such person possessess all the qualifications prescribed by the statute.—Jones on Evidence, §§ 45, 46; *Guesnard v. L. & N. R. R. Co.,* 76 Ala. 453. The trial court was therefore not required to inquire into and ascertain the general qualifications of the persons drawn from the jury box to constitute the grand jury which found the indictment in this case. The fact that the names of the persons who constituted the grand jury were drawn from the box by the presiding judge was prima facie evidence that they were qualified jurors, and was sufficient evidence to justify the court, in the absence of evidence offered at the time the grand jury was organized, to enter the order the court did enter—that the persons organized as a grand jury possessed all the qualifications required by law of grand jurors.

If this finding of the court could be impeached at all, there was nothing in the evidence of the witness Waldrop that tended to impeach it. All that his evidence tended to show was that the court made no specific inquiry as to the qualifications of the persons organized as members of the grand jury; and, as we have shown, no such duty rested upon the court, in the absence of proof overcoming the presumption of the law that the persons whose names were drawn from the jury box possessed the requisite qualifications.

The fact that the grand juror Ben Wright was related to the deceased was not material, for the reason that this was not made a ground of the motion to quash the indictment.

For reasons above stated, as well as for the reason that no objection to the indictment on any ground going to the formation of the grand jury can be taken by mo-

tion to quash (Acts Sp. Sess. 1909, p. 315; *Askew v. State,* 6 Ala. App. 22, 60 South. 455) the defendant's motion to quash the indictment was properly overruled.

After the defendant had interposed the plea in abatement to the indictment, and before the demurrer was filed thereto, the record shows that the plea was amended by striking out grounds 1, 2, and 3; some of these grounds going to the point that the persons constituting the grand jury were not drawn by the person authorized by law to draw them. With these matters stricken from the plea by amendment, the other matters sought to be presented by that plea, in view of the provisions of section 23 of the jury law (which provides: "That no objection to an indictment on any ground going to the formation of the grand jury which found the same can be taken to the indictment, except by plea in abatement to the indictment; and no objection can be taken to an indictment by plea in abatement except upon the ground that the grand jurors who found the indictment were not drawn by the officer designated by law to draw the same."—Acts Sp. Sess. 1909, p. 315, § 23), afforded no ground for quashing the indictment, and the court did not err in sustaining the demurrer to the plea in abatement.—*Collins v. State,* 3 Ala. App. 67, 58 South. 80; *Newell v. State,* 8 Ala. App. 182, 62 South. 968; *Askew v. State,* 6 Ala. App. 22, 60 South. 455.

The provisions of the statute pertaining to the time the court shall draw the regular jurors, and the number of such regular jurors to be drawn, are merely directory and constitute no ground for quashing an indictment, either on motion to quash or on plea in abatement, provided the names of such jurors are drawn by the judge of the court, the person designated by law to draw the same.—Acts Sp. Sess. 1909, pp. 315-317, §§ 23, 29.

If what was said in *Tucker v. State,* 152 Ala. 1, 44 South. 587, could be applied to the present jury law, what is there said with reference to plea in abatement has no application to the defendant's plea here filed, after its amendment eliminated the reasons for quashing the indictment discussed in that case.

Just before the fatal rencounter took place between the deceased and the defendant, the deceased and his brother had engaged in a wrestling match; there being present besides these the defendant, David Nolen, and others. Just before these parties reached the place where the difficulty occurred, the defendant had turned off on the road leading to his home, leaving the deceased and the others, who went on in the direction of their homes for a short distance, when the wrestling match was renewed between deceased and his brother, accompanied by loud talking. Upon hearing this loud talking, the defendant turned around and went back to where the deceased and the others were. David Nolen, who was an eyewitness, after detailing the facts and circumstances leading up to the time the defendant returned, further stated:

"When he (the defendant) came back, Jim Wright was insisting on wrestling with Ben Wright, and the defendant came up, and Jim Wright said to the defendant, 'Stand back, and let Ben and me wrestle.' Ben Wright said: 'I don't want to wrestle. You can come and throw me down, but I am not going to wrestle. And Jim Wright said, 'Stand back and let us have it,' and he stepped back, and Jim told Ben he would have to wrestle with him or fight him, and Jim kept on trying to get Ben to wrestle with him, and Ben would not do it, and finally Ben got him down and got astraddle of him, and said, 'See, boys, I am not trying to hurt him,' and Ben got up and grabbed his hat and ran off up that

road leading by the sorghum mill leading from the main road, and Jim Wright after him, and Mr. Rector said something like, 'Let's go after them,' and I told him not to go."

Here the solicitor asked the witness, the question, "And you said what?" Over the objection of the defendant, the court allowed the witness to answer, "I told him (the defendant) not to go." The evidence of this witness shows that the defendant replied to witness' remark, "Oh, by God, I am going," and that he went on after the Wright boys only a short distance, when he met the deceased and the difficulty occurred.

The testimony of the witness as to what the witness said to the defendant was clearly a part of the res gestæ, and the court committed no error in overruling the defendant's objection. Besides, it was but a repetition of what the witness had just stated, and no motion was made to exclude the previous statement of the same fact.

It was incumbent upon the state to show that the wounds inflicted by the defendant resulted in the death of the deceased, and the testimony of the witness Nolen tending to show, after he was cut, deceased walked off and lay down in the sand, and was carried by witness and others to the house of a Mr. Turner, and from there to Birmingham, and was brought back next day a corpse, was clearly relevant, and the court committed no error in overruling defendant's objection thereto. For like reasons, there was no error in admitting the testimony of Dr. Young, tending to show the nature and serious character of the wounds inflicted by defendant on the person of the deceased, and no prejudice could possibly have resulted to the defendant from this evidence, as it was not controverted that the deceased died from the wounds inflicted by defendant.

The defendant had a right to show that the witness Nolen on the occasion of the difficulty was under the influence of liquor, and the degree or extent of his intoxication; but the fact that the witness was afterwards indicted for public drunkenness on the occasion of a negro celebration was clearly not relevant to any issue in the case. The defendant's questions, embracing both phases of such testimony, were objectionable, and the court committed no error in sustaining the objection made thereto by the solicitor. The fact that the witness had been indicted, if such was a fact, had no probative force as evidence to show that the witness was drunk on the occasion of the fatal difficulty.

As we have shown, all that was said by those present at the place of the difficulty immediately before the fatal rencounter, and at the place where it occurred, was admissible as a part of the res gestæ, as illustrating the conduct of the parties and shedding light upon the main issue—the guilt or innocence of the defendant of some degree of homicide, as charged in the indictment. The court was not in error, therefore, in refusing to exclude the statement of the witness Burt Weathers as to what took place immediately after the defendant came back where the deceased and his brother were engaged in a wrestling contest.

The expression made by the deceased as to his desire about the prosecution of the defendant was not shown to have been under a sense of impending dissolution, so as to make it admissible as a dying declaration. It is not shown to have been so closely connected with the difficulty as to be a part of it or to shed any light on it. It was clearly inadmissible, as the desire of the deceased could not be considered by the court in the enforcement of the criminal law, whether that desire be in favor of or against the defendant, and there was no

error in the ruling of the court sustaining the state's objection to the question propounded to Dr. Young seeking to prove such desire.

For like reason, there was no error in excluding the statement which the witness Jess McGee accredited the deceased with making, to wit, "If I die, just let Jim Rector go." While this statement was made soon after the deceased was carried to Turner's residence and after the doctor had arrived, all that the record shows occurred at the time, as stated by the witness, was:

"Dr. Young called me and said if the boy made a statement he wanted some one else to hear it. Dr. Young told him he was in a bad condition and that he would like for him to make a statement, and Wright said, 'If I die, just let Jim Rector go.' Those are the words said, to the best of my knowledge. That was all he said."

There is clearly nothing in this testimony showing that the deceased was then under a sense of impending dissolution.—*Johnson's Case*, 102 Ala. 1, 16 South. 99; *Dumas v. State*, 159 Ala. 42, 49 South. 224, 133 Am. St. Rep. 17.

There was evidence on the part of the defendant tending to show that, before the defendant assaulted deceased with his knife, the deceased made a violent assault upon the defendant, knocking the defendant down with his fist, and after deceased knocked the defendant down deceased caught the defendant by his collar and assaulted him with a stick or a club; while the evidence on the part of the state tended to show that no such assault was made by the deceased upon the defendant. As tending to corroborate the state's theory, the court allowed the solicitor to inquire, on cross-examination of the defendant, as to the physical condition of the deceased at the time of the assault; and, as shedding light on this, and to show defendant's knowledge thereof, the

court allowed the solicitor to ask the defendant the following question : "You knew that he had just recently gotten up from a spell of measles, didn't you?" On cross-examination, leading questions are permissible, and the question was not subject to the objection urged against it by the defendant. If the deceased had in fact recently been ill, it was a circumstance the jury could look to, in connection with all the other evidence in the case, in determining whether or not the deceased assaulted the defendant, and, if so, in determining the character and nature of the assault.

After the witness Jim Hankins had testified that he had lived in the community where the defendant lived for 45 years, and that he had known defendant all his life, that he knew his general reputation in the community where he lived and that it was bad, and that he knew defendant's reputation in the community in which he lived for truth and veracity to be bad, and from his reputation he would not believe him on oath, and after the defendant had cross-examined this witness fully, he made a motion to exclude all the evidence of the witness on the sole ground that the witness had not qualified to testify as to the defendant's general character or as to the defendant's character for truth and veracity. The terms "general character" and "general reputation" are interchangeable, and mean the same thing in so far as these terms apply to the qualification of a witness to testify as to the general character of another person (*Way v. State,* 155 Ala. 63, 46 South. 273; *McQueen v. State,* 108 Ala. 54, 18 South. 843), and the testimony of this witness clearly qualified him to testify under this rule. There was no error in the ruling of the court in refusing to exclude his testimony.

It was not urged as an objection against the testimony of this witness that his testimony was not limited

to a time prior to the killing of the deceased by the defendant, and no request was made so to limit the testimony. For like reasons, the court committed no error in admitting the testimony of the other character witnesses, as a proper predicate was laid in each case. After the defendant raised the point that the testimony should be limited to prove the character prior to the time of the killing of the deceased, the testimony was so limited by the court, and there is nothing in this respect shown by the record prejudicial to any of the defendant's rights.—*Robinson v. State,* 5 Ala. App. 45, 59 South. 321.

Threats made by the defendant against the deceased on trial for homicide are always admissible as a circumstance to show malice, and the lapse of time does not render the evidence of such threats inadmissible. There was no error therefore in the admission of the testimony of Walter Jones of the threats made by the defendant against the deceased more than two years prior to the killing.—*Pulliam v. State,* 88 Ala. 1, 6 South. 839; *Walker v. State,* 85 Ala. 7, 4 South. 686, 7 Am. St. Rep. 17; 1 Mayf. Dig. 837.

Under the indictment in this case, the defendant was subject to conviction of any of the degrees of felonious homicide other than murder in the first degree. Although he may not have intended to kill the deceased, if he intentionally committed upon him an assault which in its nature was calculated to produce death and as a result thereof death ensued, he would be guilty of manslaughter in the first degree.—*Lewis v. State,* 96 Ala. 6, 11 South. 259, 38 Am. St. Rep. 75. Therefore charge 1, requiring an acquittal unless the jury believed beyond a reasonable doubt that the defendant intended to kill the deceased when he assaulted him, was properly refused.

Charge 2 was properly refused, because it was abstract, in that it assumed that the defendant was being assaulted by the deceased and others, while there is nothing in the evidence to authorize even an inference that any other person than the deceased assaulted the defendant. It was properly refused because it ignored the defendant's duty to retreat.

Charge 3 was properly refused. There was evidence authorizing the defendant's conviction of murder in the second degree.—*Dennis v. State,* 112 Ala. 64, 20 South. 925.

Justification for the refusal of charges 4, 5, 6, and 12 may be found in the following authorities: *Stoball v. State,* 116 Ala. 454, 23 South. 162; *Williams v. State,* 161 Ala. 52, 50 South. 59; *James v. State,* in MSS.; and *Dennis v. State, supra.*

Charge 7 is of a class that has been repeatedly condemned as submitting to the jury a question of law as to what constitutes self-defense.

Charge 8 is clearly an argument and an invasion of the province of the jury.

Charge 9 was in effect an instruction to the jury that unless the defendant was guilty of murder in the second degree he was guilty of no offense, while the evidence in the case was sufficient to sustain a conviction of any degree of felonious homicide less than murder in the first degree.

Charge 10 was properly refused because it singled out and gave undue prominence to a part of the testimony.

Charge 11 is manifestly erroneous, and was properly refused.

The insistence that the defendant was entitled to the affirmative charge because there was no proof of venue is clearly answered by circuit court rule of practice 35, which provides:

"Whenever the general charge is requested, predicated upon failure of proof as to time, venue, or any other point not involving a substantive right of recovery or defense, or because of some immaterial omission in the evidence of the plaintiff or defendant, the trial court will not be put in error for refusing said charge, unless it appears upon appeal that the point upon which it was asked was brought to the attention of the trial court before the argument of the case was concluded. The trial court must permit proof of such omission at any time before the conclusion of the argument, upon such terms as the court may prescribe, not to exceed the cost of the term and a continuance of the case, one or both."— Rule of Practice 35 (175 Ala. xxi).

There is nothing in the record in this case to show that the failure to prove the venue was called to the attention of the trial court, as required by this rule.

Furthermore, there was evidence in the case that the difficulty between the deceased and the defendant occurred within a mile and a quarter of Vernon, the county seat of Lamar county. That there is no point within a mile and a quarter of the county seat of Lamar county that is not within that county can easily be ascertained from the examination of any map of the state, and is a matter of common knowledge.

"Courts are not supposed to be ignorant of what everybody else is presumed to know. And what is thus known, juries are permitted to find, without specific proof being adduced in its support."—*Wall v. State,* 78 Ala. 418; *City Council v. Wright,* 72 Ala. 411, 47 Am. Rep. 422; *Watson v. State,* 55 Ala. 158; *Hendricks v. State, infra,* 65 South. 682.

We find no error in the record, and the judgment of the circuit court is affirmed.

Affirmed.