(97 South. 639)

**HILL v. STATE.** (6 Div. 770.)

(Supreme Court of Alabama. June 30, 1923. Rehearing Denied Oct. 18, 1923.)

1. **Jury ⬤⟳131(13)—General objection to qualification of jurors held properly overruled.**

Where, after the court had examined the regular and special venire of jurors as to their general qualifications and competency, defendant, before challenging any member of the venire, objected to the jury because the "qualifications and competency of the said jurors to try this case have not been ascertained as required by law," and the court thereupon offered to ask any further legal qualifying questions which might be suggested by defendant, and defendant declined to make any suggestion, *held*, that his objection was properly overruled.

2. **Criminal law ⬤⟳422(2)—Acquittal of defendant's son charged with same murder irrelevant and inadmissible.**

In a prosecution for murder pursuant to conspiracy between defendant and his three sons, the acquittal of one son *held* irrelevant and inadmissible.

3. **Witnesses ⬤⟳274(1)—Cross-examination of good character witnesses as to reputed acts of accused held proper.**

In murder trial, where witnesses had testified to defendant's good character, permitting the solicitor to cross-examine them as to whether they had heard of various acts of defendant which were of a nature to affect his reputation, *held* proper, for, although such matters, whether as facts or as reputed facts, are inadmissible as original evidence, as reputed facts they are properly inquired about on cross-examination to test the value of the witness' opinion.

4. **Witnesses ⬤⟳287(4)—State, on redirect examination, may bring out the whole conversation, irrespective of whether the part brought out was unfavorable to it.**

In murder trial, where, after accused had put his character in issue, a state's witness testified that accused's character was bad, and on cross-examination testified that he had heard one B. discuss accused in reference to his wife's death, it was proper for the state, on redirect examination, to ask the witness, "What was it he said about the death of his wife?" and for the witness to answer: "He said sometimes he could not hardly keep from taking his gun and going up and killing old man H. [accused], because he believed that big spree he had upon Sunday, abusing and whipping his wife, caused her death," under the rule that, when part of a conversation is put in evidence, the opposing party may rightfully call for the whole of it; the contention of accused that the cross-answers were not unfavorable to the state, and hence needed no explanation, being an untenable distinction.

5. **Criminal law ⬤⟳422(1)—Testimony as to statements made by alleged conspirator to witness held properly excluded.**

In a prosecution for murder pursuant to conspiracy, where defendant's witness had testified to meeting an alleged conspirator on the morning of the homicide, further testimony by him that such alleged conspirator had stated he was going to certain places *held* inadmissible, where such testimony, if true, was apparently not inconsistent with presence of such conspirator at the scene of the murder, as testified to by witness for the state.

6. **Criminal law ⬤⟳422(2)—Fact of indictment and trial of witness for same murder irrelevant.**

The fact that a witness for the state has been indicted and tried for the same murder, and was not at the time of trial under a charge of that murder, *held* irrelevant.

---

⬤⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Criminal law ⊕338(1)—Amount of deceased's salary irrelevant.**

In a prosecution for murder of a deputy sheriff, testimony as to a salary paid deceased by a coal company for services rendered it *held* irrelevant.

**8. Criminal law ⊕1170(4)—Witnesses ⊕370(3)—Proof of ill will of defendant's son toward him admissible; error in excluding evidence held cured by witness' admission.**

In a prosecution for murder, it was proper for defendant to prove that feelings of ill will against him were entertained by one of his sons, a confessed accomplice and witness for the state, and to ask the son if defendant did not swear out a warrant against him once for stealing his horse, though error in excluding it was cured by the witness' confession of that fact on rebuttal.

**9. Criminal law ⊕424(1)—Fact that a witness and confessed accomplice was quartered in hotel rather than jail irrelevant.**

In prosecution for murder, the fact that a state's witness, a son of defendant and confessed accomplice, who was under indictment for the same murder, when brought by officers to the place of trial as a witness for the state, was kept at a hotel instead of in jail, and the fact that he had refused to talk to lawyers employed by his father to defend him, and his statement that he did not want any lawyer, *held* irrelevant and properly excluded.

**10. Criminal law ⊕757(4)—Instruction as to acts of alleged conspirator as evidence of conspiracy held properly denied.**

Though it is true that independent acts of an alleged conspirator not done in the presence of accused, and without apparent community of action, are not evidence of a conspiracy, yet, where acts of a confessed conspirator were promotive of the common design, and done at least in part in the presence of accused acting to the same end, by his command or with his knowledge, such community of action is evidence of a common design, and an instruction that "a conspiracy cannot be proved by the acts of the coconspirator, C. H.," *held* invasive of the province of the jury.

**11. Criminal law ⊕761(17)—Instruction held properly denied as assuming interest of state's witness.**

An instruction that the jury might "consider the interest that any of the state's witnesses have in the conviction of the defendant in weighing the testimony of such witness" *held* properly denied as assuming the interest of such witness in the prosecution.

**12. Criminal law ⊕763, 764(6)—Instruction as to accused's disposition of victim's body held to invade province of jury.**

In a prosecution for murder, pursuant to conspiracy, an instruction "the defendant is indicted for the murder of T., and not for disposing of his body; any evidence of the disposition of the dead body would not affect the guilt" of defendant, *held* to invade the province of the jury, for evidence of defendant's share in the disposition of the victim's body might be regarded as corroborative of his share in the conspiracy.

**13. Criminal law ⊕829(1)—Denial of instructions covered by others given not error.**

Denial of instructions covered by others given is not error.

**14. Criminal law ⊕789(4)—Instruction as to reasonable doubt held properly denied.**

An instruction, "If the jury have a reasonable doubt of the truth or falsity of the evidence of the woman, R. W., * * * they will find defendant not guilty," *held* erroneous for the use of the words "or falsity."

**15. Criminal law ⊕780(3)—Instruction as to necessity of corroboration of conspirator held properly denied.**

In a prosecution for murder pursuant to conspiracy, an instruction, "Unless you are satisfied beyond a reasonable doubt by other evidence than that of C. H. [a confessed accomplice] that this defendant and E. H., H. H., and C. H. [sons of defendant] had formed the conspiracy or agreement to kill T., you cannot consider the evidence of C. H. in this case for any purpose whatever," *held* erroneous as requiring a finding that this defendant and all three of his sons conspired together, when, if defendant and one of his sons, who afterwards assisted in the murder, so conspired, it was enough.

**16. Criminal law ⊕785(13)—Instruction concerning proof of contradictory statements as raising reasonable doubt held bad.**

An instruction that "proof of contradictory statements or declarations on a material point made by the witness R. W. may be sufficient to raise a reasonable doubt * * * as to the truth of the testimony of said witness" *held* bad.

**17. Criminal law ⊕779—Instruction as to proof of alleged conspiracy held properly denied.**

In an action for murder pursuant to conspiracy, an instruction that the conspiracy must be proved to exist beyond a reasonable doubt, "and the proof beyond a reasonable doubt must come from other evidence than from the evidence of C. H." (a confessed accomplice), *held* properly denied as not stating the law of proof correctly.

**18. Criminal law ⊕780(3), 811(2), 815(12)—Instruction held properly denied as being argumentative and singling out special evidence, and ignoring defendant's participation.**

In a prosecution for murder, an instruction as to accused's presence at the time of the killing as testified to by a confessed accomplice *held* properly denied as being argumentative and unduly singling out special evidence, and as ignoring participation by accused in the conspiracy to murder which the evidence tended to show.

**19. Criminal law ⊕763, 764(6)—Instructions as to whereabouts of a particular witness just preceding the homicide and following held to invade province of jury.**

In a prosecution for murder pursuant to conspiracy, instructions to acquit in case of doubt as to the presence of one of the alleged conspirators at defendant's home on the evening of the day preceding the killing and on the

---

⊕For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

morning of the day on which it was committed *held* properly denied as invading the province of the jury, as the testimony as a whole might support conviction notwithstanding such conspirator's absence.

**20. Criminal law ⬤⟆779—Instruction as to necessity of finding of conspiracy held properly denied.**

In a prosecution for murder pursuant to conspiracy, an instruction to acquit unless the jury were satisfied beyond a reasonable doubt by other evidence than that of a confessed accomplice that defendant and three of his sons, including the confessed accomplice, had formed a conspiracy to kill decedent, and that such conspiracy was in existence at the time he was killed, *held* properly denied as requiring finding that all three of the defendant's sons were in the conspiracy, when a finding of a conspiracy between defendant and one of them would have been sufficient.

**21. Criminal law ⬤⟆780(3)—Instruction as to accomplice testimony held argumentative.**

In a prosecution for murder, instructions that accomplice testimony should be considered with great caution, .and looked upon with suspicion, and that the accomplice would be relieved from prosecution in consideration of his testifying, *held* properly denied, being argumentative.

**22. Criminal law ⬤⟆785(4), 811(5)—Instruction as to testimony of deputy sheriffs held argumentative, and to lay undue emphasis on official animus of such witnesses.**

In a prosecution for murder, an instruction that the jury might consider that some of the witnesses were deputy sheriffs, and weigh their evidence in that light, *held* properly denied as being argumentative and laying undue emphasis on the official animus of witnesses.

Appeal from Circuit Court, Tuscaloosa County; S. F. Hobbs, Judge.

Monroe Hill was convicted of murder in the first degree, and appeals. Affirmed.

These requests for instruction were refused to defendant:

(3) "I charge you, gentlemen of the jury, that you may consider the interest that any of the state's witnesses have in the conviction of the defendant in weighing the testimony· of such witness."

(6) "The defendant is indicted for the murder of Trewitt and not for disposing of his dead body; any evidence of the disposition of the dead body would not affect the guilt of Monroe Hill in this case."

(10) "If the jury have a reasonable doubt of the truth or falsity of the evidence of the woman, Rilla Williams, who testified in this case, they will find the defendant not guilty."

(11) "Unless you are satisfied beyond a reasonable doubt by other evidence than that of Clyde Hill that this defendant and Monroe Hill, Hard Hill, and Clyde Hill had formed a conspiracy or agreement to kill Trewitt, you cannot consider the evidence of Clyde Hill in this case for any purpose whatever."

(12) "The court charges the jury that proof of contradictory statements or declarations on a material point made by the witness Rilla Williams may be sufficient to raise a reasonable doubt in the minds of the jury as to the truth of the testimony of said witness."

(15) "In this case the state insists that there was a conspiracy between Monroe Hill, Ed Hill, Hard Hill, and Clyde Hill to effect the death of Trewitt. It is your duty under the law to find this defendant not guilty, unless evidence proves to you beyond a reasonable doubt and to a moral certainty that such conspiracy did exist between said persons to effect the death of said Trewitt at the time· of his death. And the proof beyond a reasonable doubt must come from other evidence than from the evidence of Clyde Hill."

(16) "If the jury do not believe the evidence of Clyde Hill that Monroe Hill was present at the time Trewitt was killed or in sight, coming, and if they find no other evidence in the case connecting Monroe Hill with the killing than the evidence of Clyde Hill, they will find him not guilty, although they may believe that Clyde Hill and Hard Hill were at the house of Monroe on the night preceding the alleged killing, and talked with Monroe, and that they went away in the direction in which a gun was heard to fire soon after their departure."

(17) "If the jury have a reasonable doubt that Ed Hill was present when Trewitt was killed, if he was killed, and also a reasonable doubt that he was at the house of his father, Monroe Hill, on the Monday night before the day that Trewitt was missing and the Tuesday morning of the day that he was alleged to have been killed, then they must acquit the defendant."

(18) "Unless you are satisfied beyond a reasonable doubt and to a moral certainty by other evidence than of Clyde Hill that this defendant and Ed Hill, Hard Hill, and Clyde Hill had formed a conspiracy or agreement to kill Trewitt, and that such conspiracy and agreement was in existence at the time he was killed, if he was killed, then you must acquit the defendant."

(19) "If you believe from the evidence that Ed Hill was not at the house of his father, Monroe Hill, on the Monday night before the alleged killing of Trewitt, and the morning of the day of the alleged killing, then you are not authorized to consider the evidence of Clyde Hill for any purpose in this case."

(21) "If the jury have a reasonable doubt as to the truth of the evidence of Rilla Williams to the effect that Ed Hill was at the house of Monroe Hill on the Monday evening before the day it is alleged by the state that Trewitt was killed, and also if they further have a reasonable doubt that Ed Hill was at the house of Monroe Hill on the morning that Trewitt is alleged to have been killed, then they will find the defendant Monroe Hill not guilty."

(22) "The evidence of an accomplice should be received with great caution, and should also be looked upon with suspicion."

(24) "The court charges the jury that the only evidence introduced by the state to corroborate the evidence of Clyde Hill is evidence of Rilla Williams that Ed· Hill was at the house

of Monroe Hill on the Monday evening before and the Tuesday morning of the alleged killing of Trewitt, and that on such occasions there was a conversation or conversations between Monroe Hill, Ed Hill, Hard Hill and Clyde Hill, together with the circumstances of the sons, Hard and Clyde, returning to the house of Monroe Hill. And if they have a reasonable doubt that Ed Hill was at the house of Monroe Hill at the times so testified to by said witnesses, then they must find the defendant not guilty."

(27) "Clyde Hill having testified in this case, there is an implied understanding that he is not to be prosecuted for the offense of the killing of Earl Trewitt."

(29) "I charge you that in this case you may consider the fact that some of the witnesses are deputy sheriffs. The law allows you to weigh their evidence in that light."

(30) "The evidence of an accomplice should be received with great caution, and should also be looked upon with suspicion; it is the general rule that the accomplice is to be relieved from prosecution on consideration of his testifying, and all these matters should be considered by the jury in weighing his evidence."

Brown & Griffith, of Cullman, Ray & Cooner, of Jasper, and Edw. De Graffenried, Jr., and F. F. Windham, both of Tuscaloosa, for appellant.

General character cannot be shown by proof of particular acts. Maxwell v. State, 11 Ala. App. 53, 65 South. 732; Moulton v. State, 88 Ala. 116, 6 South. 758, 6 L. R. A. 301; Morgan v. State, 88 Ala. 223, 6 South. 761; Evans v. State, 109 Ala. 11, 19 South. 535. Charge 1 should have been given, and its refusal constitutes reversible error. Chaney v. State, 178 Ala. 44, 59 South. 604; Bailey v. State, 168 Ala. 4, 53 South. 296, 390; Neilson v. State, 146 Ala. 683, 40 South. 221; Bryant v. State, 116 Ala. 445, 23 South. 40. The interest of a witness in the success of the party for whom he testifies may be proven to show bias. A. G. S. v. Burgess, 114 Ala. 597, 22 South. 169; 40 Cyc. 2651; Grayson v. State, 162 Ala. 84, 50 South. 349; Cook v. State, 152 Ala. 66, 44 South. 549; Prince v. State, 100 Ala. 144, 14 South. 409, 46 Am. St. Rep. 28. The motion to exclude the evidence of Clyde Hill, co-conspirator, should have been granted; there being no evidence aliunde to connect defendant with the homicide. Smith v. State, 46 Tex. Cr. R. 267, 81 S. W. 936, 108 Am. St. Rep. 991; Phœnix Ins. Co. v. Moog, 78 Ala. 284, 56 Am. Rep. 31; McAnally v. State, 74 Ala. 9; Morris v. State, 146 Ala. 66, 41 South. 274; Jackson v. State, 178 Ala. 76, 60 South. 97; Smith v. State, 8 Ala. App. 187, 62 South. 575; Martin v. State, 28 Ala. 71. What a person says upon setting out upon a journey is admissible, as of the res gestæ. Mayo v. State, 15 Ala. App. 305, 73 South. 141; Kilgore v. Stanley, 90 Ala. 523, 8 South. 130; Davis v. State, 188 Ala. 59, 66 South. 67; Jones v. State, 174 Ala. 53, 57 South. 31;

Terry v. State, 203 Ala. 99, 82 South. 113; Pitts. v. Burroughs, 6 Ala. 735.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

A part of a conversation being elicited by defendant, the state had the right to bring out the whole. Norris v. State, 16 Ala. App. 126, 75 South. 718; 12 Mich. Ala. Dig. 1238. The statute does not impose upon the court the duty of interrogating jurors for the purpose of challenge. Murphy v. State, 37 Ala. 142; Jackson v. State, 94 Ala. 85, 10 South. 509; Terry v. State, 13 Ala. App. 115, 69 South. 370. No objection being taken to a question, a motion to exclude the answer comes too late. Connelly v. State, 18 Ala. App. 424, 93 South. 45; Pittman v. State, 18 Ala. App. 447, 93 South. 42; Patterson v. State, 18 Ala. App. 507, 93 South. 691. Evidence of where Ed Hill told a witness he was going was properly refused. Granberry v. State, 184 Ala. 5, 63 South. 975.

SOMERVILLE, J. [1] The record proper recites that—

"The defendant in open court, before the oath is administered to the jury to try this case, and before challenging any member of the venire, but after the court had questioned them touching their qualifications and competency as jurors, makes objection to the said jurors being put upon him for the trial of this case, because the qualifications and competency of the said jurors to try this case have not been ascertained as required by law."

A previous recital of the record shows that the court had examined and passed upon the general qualifications of all of the special veniremen. A recital in the bill of exceptions shows that "after the regular and special venire of jurors had been qualified by the court and examined touching their fitness to sit upon the cause now about to be tried," and after the above objection was filed, the court "does here and now offer to further qualify each and every member of the regular and special venire touching their qualifications and competency to sit on this case, and to ask any other legal qualifying question which may be suggested by the defense," and that "the defendant then and there, in open court, declined to make any suggestion." Defendant's objection to the jury was then overruled, and the ruling was clearly proper.

It is of course the duty of the trial judge to ascertain the qualifications of the jurors in every case. O'Rear v. State, 188 Ala. 71, 66 South. 81; Folkes v. State, 17 Ala. App. 119, 82 South. 567. It appears that in this case he ascertained, by inquiry of them, that they were not witnesses in the case; that they had no fixed opinion as to the defendant's guilt or innocence; that no one had sought to influence them; that they were not opposed to capital punishment; that they would convict on circumstantial evidence;

and that none of them had been indicted for or convicted of a felony. If defendant was not satisfied with such an examination and qualification, he should have pointed out the omissions he objected to, and requested the proper inquiries. James v. State, 53 Ala. 380, 387; Braham v. State, 143 Ala. 28, 33, 38 South. 919. Having failed to avail himself of the offer made by the trial judge and making no suggestion that any juror was in fact disqualified for any reason, his objection was properly overruled. Braham v. State, supra.

[2] The fact that Ed Hill, a son of this defendant, and' one of the four alleged conspirators in the killing, had been tried for this same murder on the same theory of conspiracy here presented, and acquitted, was patently irrelevant and inadmissible on the issue of this defendant's guilt, and the demurrer to defendant's plea setting up that acquittal in bar of his own conviction here was properly sustained. Such an acquittal is no more competent to show the defendant's innocence than that other's conviction would have been to show the defendant's guilt.

The most important witness for the state was Clyde Hill, the youngest son of the defendant, who testified that the murder charged was planned by the defendant and his two other sons, Ed and Hard, and the witness, and was executed by the three of them near defendant's home, whither they had lured their unsuspecting victim, the motive of the murder being their belief that he had betrayed them and caused their illicit stills to be raided and destroyed. This witness testified that the defendant, though not actually present, was an accessory to the murder, and that he aided in the preparation of the grave in which their intended victim was to be buried, and in the removal and concealment of the body in another grave afterwards.

The chief points of controversy throughout the trial were the existence of the alleged conspiracy, and the sufficiency of the evidence, outside of the testimony of the coconspirator and accomplice, Clyde Hill, to connect the defendant with the commission of the crime. We have examined the testimony with due care, and are convinced that the testimony of Clyde Hill was corroborated by other competent testimony which tended to so connect the defendant, especially the testimony of Rilla Williams, his stepdaughter, who was living in his house. It will therefore suffice to say, with respect to all those objections to testimony, and all instructions requested and refused, based upon the assumption that there was no such corroborating testimony, that they were properly overruled and refused.

[3] In the cross-examination of witnesses who testified to the good character of the defendant, the solicitor was allowed to ask them whether they had heard of various acts of the defendant which were of a nature to affect his reputation. Such matters, whether as facts or as reputed facts, are not admissible as original evidence, but, as reputed facts, are properly inquired about on cross-examination to test the value of the witness' opinion. Moulton v. State, 88 Ala. 116, 6 South. 758, 6 L. R. A. 301. Appellant's argument overlooks this important distinction. Had the questions complained of sought to elicit testimony that the defendant had actually done those things, they would have been improper, and their allowance erroneous.

[4] One ruling especially complained of is thus correctly stated in defendant's brief:

"After defendant had put his character in issue, one W. H. Ballinger, introduced as a witness by the state, testified in part on direct examination that he knew the defendant, Monroe Hill; that he knew his general character and reputation; that he considered it bad; that his character for truth and veracity was bad and he could not believe him on his oath. On cross-examination the witness testified in part that witness had heard one Blackman discuss Monroe Hill in reference to his wife—the death of his wife. On redirect examination the state asked the witness the following question: 'What was it he said about the death of his wife?' The defendant objected to this question, and the court overruled the objection, to which action of the court the defendant then and there duly excepted. The witness answered: 'He said sometimes he could not hardly keep from taking his gun and going up and killing the old man Hill because he believed that big spree he had upon Sunday, abusing and whipping his wife, caused her death.' "

The record shows that the answers on cross-examination were in response to defendant's questions: "What did you hear Mr. Blackman say?" and "Name one of the ways that you heard?" The argument is that the cross-answers were not unfavorable to the state, and needed no explanation. But the rule is well settled that—

"When part of a conversation, or part of a transaction, is put in evidence, the opposing party may rightfully call for the whole conversation or transaction." Gibson v. State, 91 Ala. 64, 69, 9 South. 171, 174.

Illustrations in point will be found in Allen v. State, 134 Ala. 159, 32 South. 318, and Norris v. State, 16 Ala. App. 126, 75 South. 718. The distinction suggested by counsel is not tenable, and finds no support in the authorities. We think the ruling complained of was correct.

[5] It was not competent for defendant's witness Wingo, who testified that he met Ed Hill, one of the alleged conspirators, on the morning of the murder between daylight and sunup, to further testify that Ed Hill then said he was going to Creeltown and to the mill. Even if that had been true, it does not appear to have been inconsistent with his presence at the scene of the murder as testi-

fied to by Clyde Hill. It clearly does not come within the rule that the concurrent declarations of one setting out on a journey, explanatory of the object he has in view, may be shown as part of the res gestæ. Kilgore v. Stanley, 90 Ala. 523, 8 South. 130; Harris v. State, 96 Ala. 24, 11 South. 255; Maddox v. State, 159 Ala. 53, 48 South. 689.

[6] The facts that Ed Hill, who was a witness in this case, had been indicted and tried for this same murder, and that he was not now under a charge of this murder, were not relevant to any issue before the court, and were properly excluded.

[7] How much monthly salary the deceased, who was a deputy sheriff, had been paid by the Empire Coal Company for services rendered to it, was patently irrelevant and properly excluded.

Complaint is made that defendant was not allowed to prove that the Empire Coal Company was interested in the prosecution of the case, in connection with the fact that a number of the state's witnesses were employed by that company. The record does not support this complaint.

[8] It was of course competent for defendant to show that his son Clyde entertained feelings of ill will against him, and to ask him if defendant did not swear out a warrant against him once for stealing his horse. The error in excluding that inquiry on cross-examination was cured by the witness' concession of that fact on rebuttal.

[9] The fact that Clyde Hill, a confessed accomplice, and under indictment for the murder, when brought to Tuscaloosa by officers as a witness for the state was kept at a hotel instead of in jail, was not relevant to any issue in the case, and was properly excluded. So, also, was the fact that he refused to talk to the lawyers his father employed to defend him, and his statement that he did not want any lawyer.

There were other exceptions to rulings on the evidence. We have examined all of them, and they are too patently without merit to justify their statement and discussion.

Exception was taken to some portions of the judge's oral charge as being incorrect statements of the law of murder and conspiracy, and of the guilt and conviction of accessories, and of the testimony of accomplices. Standing alone, some of these excerpts were incomplete and misleading, but, taking the charge as a whole, it contained nothing improper or prejudicial, and of it defendant cannot justly complain.

We now discuss the written charges requested by the defendant and refused by the trial judge. These charges are in large part unnumbered, and those that are numbered are poorly arranged in the record, so that reference to them is impossible except by our own numbering.

[10] Charge 1 is, as applied to the evidence, invasive of the province of the jury. It is certainly true that the independent acts of one alleged conspirator, not done in the presence of the accused, and without apparent community of action, are not evidence of a conspiracy between them. But where, as the evidence here showed, the acts of Clyde Hill, promotive of the common design, were in part at least done in the presence of the defendant acting to the same end, by his command or with his knowledge, such community of action is evidence of a common design; and the instruction that "a conspiracy cannot be proved by the acts of the coconspirator, Clyde Hill," was invasive of the province of the jury, and would have been highly misleading. As said in Tanner v. State, 92 Ala. 1, 9 South. 613:

"Community of purpose, or conspiracy, need not be proved by positive testimony. It rarely is [so] proved. The jury are to determine whether it exists, and the extent of it, *from the conduct of the parties*, and all the testimony in the cause." (Italics supplied.)

In Martin v. State, 89 Ala. 115, 119, 8 South. 23, 24 (18 Am. St. Rep. 91), it was said that community of unlawful purpose "may be inferred from the conduct of the participants." In Elmore v. State, 110 Ala. 63, 20 South. 323, this instruction given for the state was approved:

"It is not necessary that community of purpose should be proved by positive testimony, but it is for the jury to determine from the conduct of the parties and all the evidence in the case whether it existed."

An illustration in point will be found in Collins v. State, 138 Ala. 57, 62, 34 South. 993.

[11] Charge 3 is objectionable in assuming that the state's witnesses had an interest in the prosecution.

[12] Charge 6 is invasive of the province of the jury. Evidence of defendant's share in the disposition of the victim's body might be regarded as corroborative of his share in the conspiracy, especially in connection with other evidence. However, it was covered by given charge 15.

[13] Charge 8 was covered by given charge 18.

[14] Charge 10 is manifestly bad by reason of the alternative "or falsity," if not otherwise bad.

[15] Charge 11, as to its main proposition, was covered by several other charges. As framed, it is bad in requiring a finding that the defendant and all three of his sons conspired together. If defendant and one of his sons, who afterwards assisted in the murder, so conspired, this was enough.

[16] Charge 12 is a copy of a charge that was approved as correct in Gregg v. State, 106 Ala. 44, 17 South. 321. But in the later case of Brown v. State, 142 Ala. 287, 38 South. 268, the charge was held bad, and Gregg v. State was overruled on that point.

Charge 13 is misleading, but was covered by given charge 14.

Charges 14 and 26 were substantially covered by the oral charge, and by given charges

3, 20, and 46. Those charges clearly stated the proposition of law invoked by this charge, and defendant was not entitled to anything more.

[17] Charge 15 does not state the law of proof correctly. It is specifically condemned by the decision in Lumpkin v. State, 68 Ala. 56.

[18] Charge 16 is argumentative, and unduly singles out special evidence. It also ignores participation by defendant in the conspiracy which the evidence tended to show.

[19] Charges 17, 19, 21, and 24 are invasive of the province of the jury, in that the presence of Ed Hill at defendant's home on the night before the murder was not the only basis for defendant's conviction. Notwithstanding his absence at that time, the testimony as a whole might still support a conviction.

[20] Charge 18 is bad since it was not necessary for the jury to find that all three of defendant's sons were in the conspiracy. Apart from that improper requirement, it was covered by other given charges.

Charge 20 was covered by the oral charge, and by given charge 30.

[21] Charges 22 and 30 are argumentative merely, and do not state a principle of law.

Charge 23 was covered by given charge 48.

Charge 27 is argumentative merely, and does not state a principle of law.

[22] Charge 29 is argumentative, and lays undue emphasis upon the official animus of witnesses who are deputy sheriffs.

The criticism made of the written charges given for the state are not well founded. They correctly define the relation and responsibility of an accomplice.

We have examined every contention made in behalf of the defendant, and we are satisfied that he was tried by a duly qualified and impartial jury, under instructions so full and favorable that the jury could not have misunderstood the law of the case or its proper application to the evidence before them. We find no prejudicial error in the rulings of the trial court, and the judgment will be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.