(101 So. 312)
## WHITE v. STATE. (2 Div. 313.)

(Court of Appeals of Alabama. Aug. 19, 1924.)

1. Criminal law ⊜⇒419, 420(1)—Exclusion of testimony of conversation with accused held proper.

In prosecution for murder, where a witness for defendant testified that the morning before the night of the killing he met defendant on a road, excluding answers to questions whether defendant asked him about a certain person, and whether he told accused that that person was sick, was proper, since they called for hearsay, and evidence not a part of the res gestæ.

2. Homicide ⊜⇒175—Testimony held sufficient to identify deceased as person concerning whom physician testified.

Where a physician testified that he attended a negro brought to him by another physician, testimony of the other physician that he carried deceased to the first witness, and that it was the only case of the kind, sufficiently identified the negro referred to by the first witness to render his testimony concerning cause of death admissible.

3. Criminal law ⊜⇒1086(14) — Objection to question propounded should be shown on appeal.

On appeal, an objection to question propounded should be shown, in order to predicate error on denial of motion to exclude answer.

4. Criminal law ⊜⇒1044—In absence of motion to exclude answer to question, nothing presented for review.

Where the accused's objection to a question to a witness was overruled, and an exception reserved, but no motion made to exclude the answer, there was nothing presented for review.

5. Criminal law ⊜⇒778(5)—Instruction held faulty, as placing burden of negativing irresponsibility on state.

A charge to acquit if jury was not convinced that the accused was not suffering from impulsive or momentary insanity, rendering him mentally irresponsible, placed the burden of negativing irresponsibility on the state, and was misleading.

6. Criminal law ⊜⇒778(5) — Charge placing burden of proving insanity on state held bad.

A charge to acquit if the jury was not convinced that accused was mentally responsible at the time of the offense was bad, as placing burden of proving sanity on the state, contrary to Code 1907, § 7175.

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Homicide ⬤⟹300(15)—Charge omitting imminent peril as essential element of self-defense held bad.**

A charge that, if accused did not provoke the difficulty, and was not at fault in bringing it on, and did not fight willingly, and used no more force than was necessary to repel the accused, he was under no duty to retreat, was bad, as omitting imminent peril, which is an essential element of self-defense.

**8. Homicide ⬤⟹118(1)—One not ordinarily excused for taking human life, if he could retire without increasing peril.**

Except in exceptional cases, one is not excused for taking human life, if he could retire from a combat without increasing his peril.

**9. Homicide ⬤⟹300(11) — Requested charge, based on threat by deceased, held abstract, in absence of evidence of such threat.**

In a prosecution for murder, where there was no evidence of a threat by deceased, a requested instruction, in effect that the accused had a right to act on the appearance of things at the time of the killing, and to interpret the conduct of deceased in the light of any threat against him, was abstract, and properly refused.

**10. Criminal law ⬤⟹564(1), 753(2)—Evidence held to prove venue, and defeat motion for affirmative charge.**

In a prosecution for murder, testimony of a witness that the shooting took place in a certain county was sufficient to prove venue, and to defeat a request for affirmative charge on ground that the venue had not been proved.

**11. Criminal law ⬤⟹304(14)—Court takes judicial knowledge of jurisdiction of circuit court of a county.**

If an offense took place within Dallas county, the court judicially knows that it took place within the jurisdiction of the circuit court of that county.

Appeal from Circuit Court, Dallas County; S. F. Hobbs, Judge.

Elliott White was convicted of murder, in the second degree, and appeals. Affirmed.

These charges were refused to defendant:

"13. If you are not convinced by a preponderance of the evidence that the defendant was not, at the time he struck deceased with his gun, suffering from impulsive or momentary insanity of such a nature as to render him mentally irresponsible for his actions, then it is your duty to acquit the defendant.

"15. If you are not convinced by a preponderance of the evidence that the defendant was mentally responsible for his acts at the time he struck deceased with his gun, then it is your duty to acquit the defendant.

"16. If you believe from the evidence that the defendant did not provoke the difficulty between himself and Morris Edwards, the deceased, and that the defendant was not at fault in bringing it on, and that he did not fight willingly, and used no more force than was necessary to repel deceased, then the defendant was under no duty to retreat from the deceased.

"11(C). The court charges the jury that it is not necessary under the evidence in this case that the defendant should have been in actual danger of death or great bodily harm at the time he hit Morris Edwards, or that retreat would have really increased his peril, in order for him to be justified in making the fatal blow. He had the right to act on the appearance of things at the time, taken in the light of all the evidence, and he had the right to interpret the conduct of Morris Edwards in the light of any threat that the evidence proved Morris Edwards to have made against the defendant. If the circumstances attending the difficulty which resulted in the death of Morris Edwards were such as to justify a reasonable man in the belief that he was in danger of great bodily harm or death, and that he could not have retreated without adding to his peril, and he honestly believed such to be the case, then he had the right to strike in his own defense, although as a matter of fact he was not in actual danger, and retreat would not have endangered his personal safety; and if the jury believe from the evidence that the defendant acted under such conditions as above set forth, the burden of showing that defendant was not free from fault in bringing on the difficulty is on the state, and, if not shown, the jury should acquit defendant."

The other facts sufficiently appear in the opinion.

Wm. R. Rountree, Jr., of Selma, for appellant.

Brief of counsel did not reach the Reporter.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

Where no objection is interposed to a question, a motion to exclude, the answer comes too late. Kirby v. State, 16 Ala. App. 467, 79 South. 141; Null v. State, 16 Ala. App. 542, 79 South. 678. Objections to the questions to witness Burns were properly sustained. Spelce v. State, post, p. 412, 103 So. 694. Requested charges were properly refused.

FOSTER, J. Defendant was indicted for murder in the first degree, and convicted of murder in the second degree.

The evidence for the state tended to show that early on a Saturday night during the month of May, 1923, the deceased (Morris Edwards) was at the house of one Martha Fulford, defendant's mother-in-law, and was preparing to leave when defendant arrived, raised and fired a single-barrel shotgun, followed after deceased, and struck him over the head with the barrel of his gun. The deceased died several days later.

The evidence for the defendant tended to show that improper relations had existed between deceased and defendant's wife. Defendant testified that just before the fatal

---

⬤⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

difficulty he detected his wife and deceased in a compromising position; that as soon as he saw them, the deceased ran towards him, and he (defendant) struck deceased over the head with his gun.

[1] George Burns, witness for defendant, testified that about 9 o'clock of the morning before the night of the fatal difficulty he met defendant on the road between Burnsville and Selma. This question was asked witness on direct examination: "Did he ask you about Florence?" State's objection to this question was sustained, and defendant excepted. Witness was then asked; "Did you tell Elliott White that Florence was sick?" Objection of state to this question was also sustained, and an exception was reserved. Both of these questions called for hearsay evidence. Neither of them elicited testimony as to where defendant was going, and his object in going. Clearly neither of them fall within the rule that the concurrent declarations of one setting out on a journey, explanatory of the object he has in view, may be shown as a part of the res gestæ. Hill v. State, 210 Ala. 221, 97 South. 639; Spelce et al. v. State, post, p. 412, 103 South. 694.

[2] Dr. W. W. Harper, witness for the state, testified that a negro was brought to him by Dr. C. Gale; that this negro was suffering from a fractured skull, caused by being struck with some solid substance like wood or iron; and that this negro died as a result of such injury. Motion to exclude the testimony of this witness was made on the ground that the negro was not shown to be the one alleged to have been killed (Morris Edwards). An examination of the evidence shows that the witness was asked: "Did you ever attend a negro man named Morris Edwards?" The witness answered as follows: "Is that the negro Dr. Gale brought in?" "Yes, sir." The testimony of Dr. C. Gale, that he examined Morris Edwards, discovered that he had a fractured skull, carried him to Dr. W. W. Harper, and that was the only case of the kind that he had carried to Dr. Harper, sufficiently identifies the negro referred to by Dr. Harper as the negro alleged in the indictment to have been killed.

[3] No grounds were assigned for the motion to exclude the statement of the witness Charlie Goldsby, "We carried him to Dr. Cale, or Dr. Gale, or something like that," and this statement might have been given in response to a question calling directly for it, to which no objection was interposed. An objection to the question propounded should be shown. Dowling v. State, 151 Ala. 131, 44

South. 403; Bone v. State, 8 Ala. App. 59, 62 South. 455.

[4] Dock Fulford, witness for the state, was asked on direct examination:

"Did he [defendant] come up there on one occasion, after the separation took place and before this difficulty took place, and tell your sister in your presence that he had another woman, and she just as well get her another man?"

Defendant's objection to the question was overruled, and an exception reserved. However, no motion was made to exclude the answer to the question. In the absence of a motion to exclude the answer, there is nothing presented for review. Rector v. State, 11 Ala. App. 333, 66 South. 857; Johnson v. State, 4 Ala. App. 62, 58 South. 754.

Charge 14 was fairly and substantially covered by the court's oral charge to the jury.

[5] Charge 13 is faulty. By the use of the double negative, it places the burden of negativing irresponsibility upon the state, and it is misleading.

[6] Charge 15 is also bad, in that it places the burden of proving sanity upon the state, contrary to the provision of section 7175 of the Code of 1907. The law on this point was correctly stated in the oral charge of the court.

[7, 8] Charge 16 does not state the law with reference to self-defense correctly. It omits "imminent peril," an essential element of self-defense. Furthermore, except in exceptional cases, of which the instant case is not an example, one is not excused for taking human life, if he could retire from the combat without increasing his peril. Morrison v. State, 84 Ala. 405, 4 South. 402; Underwood v. State, 179 Ala. 9, 60 South. 842.

Charge B was substantially covered by given charge A.

[9] Charge 11 (also lettered C) was abstract, and properly refused. There was no evidence of any threat having been made by deceased against the defendant.

[10, 11] The request for the affirmative charge on the ground that the venue had not been proven was not sustained by the testimony. The witness Nora White testified: "The place where that shooting occurred was in Dallas county." The court judicially knows, if the offense took place in Dallas county, it took place within the jurisdiction of the circuit court of Dallas county.

There is no error in the record, and the judgment of the circuit court is affirmed.

Affirmed.