Timothy Stokes was convicted of theft of property in the second degree in violation of Ala. Code (1975), § 13A-8-4 (e), and sentenced to seventeen years in the penitentiary as a habitual offender. On appeal, he argues that the State's evidence was insufficient to support his conviction and that the closing argument of the District Attorney was reversibly prejudicial.
The State's evidence established that John Beam, a security guard for K-Mart Corporation, observed Timothy Stokes and Diane Levert enter the K-Mart store where he was employed. The pair obtained a shopping cart, went to the cigarette stand, and began removing cigarette cartons from the rack. Stokes handed several cartons to Levert and she, in turn, put the cigarettes into the shopping cart. Then they went to the candy department where, according to Beam, Levert put the cigarettes into her purse as Stokes "was standing there with his back to her and looking across the store, just looking around."
Stokes and Levert then proceeded to the check-out lane where Levert paid for one small item but did not present the cigarettes for payment. At that point, Beam approached Levert and told her he was a security guard. She resisted his approach, and began to scuffle with him. Meanwhile, Stokes "turned and went back into the store, back into the automotive department."
Beam stated that, after he subdued Levert, he went to the automotive department, identified himself to Stokes, who was standing about ten feet from an exit, and requested that Stokes accompany him to the security office. Stokes said, "I don't know that woman." Beam testified that eight cartons of cigarettes belonging to K-Mart Corporation, worth a total of $54.96, were found in Levert's purse. On cross-examination, Beam acknowledged that Stokes never "rolled the [shopping] basket" and that Stokes "couldn't have seen [Levert] put the cigarettes in the bag because he had his back to her."
Jacquelyn Wilkes, a K-Mart check-out employee on the day in question, echoed Beam's testimony and characterized Stokes's conduct as "looking around the store like he was watching for [Levert]."
 I
In order to prove a case of shoplifting, the State must show "[t]he theft of property which exceeds $25.00 in value, and which is taken from or in a building where said property is sold or stored. . . ." Ala. Code (1975), § 13A-8-4 (e). It must further establish that the defendant "[k]nowingly obtain[ed] or exert[ed] unauthorized control over the property of another, with intent to deprive the owner of his property." Ala. Code (1975), § 13A-8-2 (1).
The evidence here clearly established the statutory requisites of ownership, value, and location of the goods, as well as unauthorized control over the property. The only element of the offense with which Stokes takes issue is the criminal intent required for theft. He claims that even the testimony of the State's two witnesses *Page 966 
negates his knowledge of Levert's theft, i.e., that he had his back to her while she put the cigarette cartons into her purse.
We find, however, that it was this very testimony which provided an inference of Stokes's guilt and was sufficient to make the matter of intent a jury question. As we said in Kimblev. State, 448 So.2d 429, 431 (Ala.Crim.App. 1983).
 "Although . . . there was evidence that the appellant actually took Gordon's money, the evidence was, nevertheless, sufficient for the jury to infer appellant's participation in the robbery.
 `While mere speculation, conjecture, or surmise will not authorize a conviction, the jury is under a duty to draw whatever permissible inferences it may from circumstantial evidence and to base its verdict on whatever permissible inferences it chooses to draw. Kontos v. State, 363 So.2d 1025, 1034 (Ala.Crim.App. 1978).'
 Stewart v. State, 405 So.2d 402 (Ala.Crim.App. 1981). A permissible inference from the evidence in this case was that the appellant conspired with McHarris immediately before the robbery and participated therein as either a decoy or a look-out." (Emphasis added.)
The jury here was likewise authorized to draw the inference that Stokes and Levert had planned to shoplift before they entered the store and, once inside, Levert would conceal the cigarettes while Stokes acted as a lookout. In our judgment, the question as to whether Stokes intended to deprive K-Mart of its property was a question for the jury, which the jury decided adversely to him. Craig v. State, 410 So.2d 449, 453
(Ala.Crim.App. 1981).
 II
Stokes claims the court erred by denying his motion for mistrial following the District Attorney's reference in closing arguments to Diane Levert's conviction, a fact of which there was no evidence at Stokes's trial. From the record:
 "MR. BOUDREAUX [Assistant District Attorney]: We are not trying Miss Levert even though Mr. Dawson's got up here so he can heap abuse on her. Just part of the big smoke screen.
 "MR. DAWSON [Defense Counsel]: Judge, he could have called Miss Levert as a witness if he wanted to.
"THE COURT: Overrule.
 "MR. BOUDREAUX: Somebody that's been convicted by this office, she'd make a damn good witness for me, wouldn't she? She'd be a real good witness.
 "MR. DAWSON: I don't believe there's any testimony about that either. We'd have to object and move for another mistrial.
 "THE COURT: Overrule as far as a mistrial. Ladies and gentlemen, you are to consider only that evidence which was before you in the form of testimony and any of that which was introduced into evidence. Consider none other.
"You may proceed." (Emphasis added.)
Citing Hill v. State, 210 Ala. 221, 97 So. 639 (1923), Stokes directs our attention to the general rule that evidence of the conviction or acquittal of a co-defendant for the same offense with which the accused is charged is inadmissible. "It is usually prejudicial for the prosecution to observe . . . that another defendant has been convicted or has pleaded guilty."Whartons Criminal Procedure § 534 at 496 (C. Torcia 12th ed. 1975). "A prosecuting attorney's argument or disclosure during trial that another has been convicted or has pleaded guilty is, of course, arguing from a fact not in evidence and getting before the jury a fact not admissible in evidence." Annot., 48 A.L.R.2d 1016, 1018 (1956).
A survey of the Alabama cases on this point reveals that disclosure of the outcome of a co-defendant's case has been denounced whether it occurred in argument, see Knowles v.State, 44 Ala. App. 163, 204 So.2d 506 (1967) (Prosecutor's statement that other defendants had already pled guilty). Bellv. State, 41 Ala. App. 561, 140 So.2d 295 (1962) (Prosecutor's statement that co-defendant had confessed); Lowery *Page 967 v. State, 21 Ala. App. 352, 108 So. 351 (1926) (District attorney's comment that one person had already been convicted);Felder v. State, 20 Ala. App. 603, 104 So. 444 (1925) (Prosecutor's comment that, "The other man had pleaded guilty"), in the State's case-in-chief, see Williams v. State,369 So.2d 910 (Ala.Crim.App. 1979) (State's witness asked whether he testified in case when co-defendant was convicted);Lane v. State, 40 Ala. App. 174, 109 So.2d 758 (1959) (State asked co-indictee the outcome of his prosecution); Evans v.State, 39 Ala. App. 498, 105 So.2d 831 (1958) (District attorney asked accomplice whether he was guilty of same offense with which defendant was charged), or during the presentation of the defense, see Dickens v. State, 49 Ala. App. 480, 273 So.2d 240
(1973) (Defendant questioned, on cross-examination, about co-defendant's guilty plea); McGhee v. State, 41 Ala. App. 669,149 So.2d 1 (1962) (Defendant sought to present evidence of co-defendant's acquittal); Hill v. State, 210 Ala. 221,97 So. 639 (1923) (Defendant claimed his own prosecution should be barred by accomplice's acquittal).
In all of the Alabama cases cited above, the reviewing courts have disapproved of reference to the disposition of a co-defendant's case on the theory that the outcome of another's prosecution is simply irrelevant to the guilt or innocence of the defendant and may not be received as substantive evidence at defendant's trial. See, e.g., Hill v. State, 210 Ala. 221,97 So. 639 (1923). This is not to say, of course, that for impeachment purposes, a co-defendant may not be questioned regarding his conviction for the same offense. See generally C. Gamble, McElroy's Alabama Evidence § 149.01 (8) (3d ed. 1977). The trial court should receive the latter kind of evidence, however, only as it bears on the testifying co-defendant's credibility and should, on request, instruct the jury regarding its limited purpose. See generally 1 Wigmore, Evidence § 13 (Fillers rev. 1983).
While we recognize the general rule of inadmissibility of a co-defendant's conviction, we find that in the circumstance of this case the error was cured by the trial court's admonition to the jury to disregard the prosecutor's comment. See Williamsv. State, 369 So.2d 910 (Ala.Crim.App. 1979) (Error cured by court's instruction to disregard); Bell v. State, 41 Ala. App. 561, 140 So.2d 295 (1962) (Error cured by court's admonition that statements of attorneys are not evidence and that jury should decide case on what the evidence showed). See generally
Annot., 48 A.L.R.2d 1016 (1956).
Moreover, we note that the District Attorney's reference to Miss Levert's conviction was not at odds with the characterization apparently given her by defense counsel himself. The defendant's strategy in closing argument was obviously to paint Miss Levert as the guilty shoplifter and to exonerate Stokes as unaware of her criminal purpose. In this regard, we deem the prosecution's closing argument to be closely akin to the comments of the District Attorney in Peoplev. Petrov, 75 Mich. App. 532, 255 N.W.2d 673, 675 (Mich.Ct.App. 1977), wherein the Michigan Court of Appeals observed the following:
 "[W]hen read in context of the trial testimony and the entire closing argument of both attorneys, we find no prejudicial error. The prosecutor was commenting on the accomplice's involvement in crime as it related to his credibility. Defense counsel himself had characterized the accomplice as the `mastermind' behind the extortion plot. In addition the accomplice had plead guilty of a lesser offense. The prosecutor was not expressing an opinion as to a disputed fact."
In his closing argument, the prosecutor also stated, "You are the ones that pay the prices when you go into K-Mart because folks like him are in there shoplifting." Defense counsel objected: "Judge, we submit that is improper argument and we'd take exception and move for another mistrial." The trial judge overruled this request.
Even though this argument was improper, a reversal is not required. This argument *Page 968 
is related to that of appealing to the jurors' interests as taxpayers, a summary of which is found in Annot. 33 A.L.R.2d 459, 460 (1954):
 "The courts are agreed as to the impropriety of argument, in a criminal case, appealing to the jurors' interest as taxpayers, either by reference to the fact that the particular effect on such interest, or by dwelling upon the expense involved in prosecuting and punishing the offense, and enforcing the laws generally.
 "However, while such argument is admittedly improper, it constitutes reversible error only where, under all the circumstances, it appears to have generated prejudice actually affecting the verdict, and where the court is convinced from all the evidence that the conviction was proper, or it appears that the trial judge took effective action to remove any improper consequence of the argument, it has been held not to amount to reversible error."
See also Stewart v. State, 18 Ala. App. 92, 95-6, 89 So. 391, cert. denied, 206 Ala. 9, 89 So. 395 (1921) (Prejudicial error for prosecutor to argue in murder prosecution that three small children of the deceased were in state institutions, that "the State of Alabama is now taking care of them," and that they are "being cared for by the taxpayers"); Gilbert v. State,19 Ala. App. 104, 106, 95 So. 502 (1923) (Prosecutor's argument, "Do you realize what an economic drain" such men as the defendant are on "your country and your community," and "Do you think of the amount of money and expense it takes to make a good man of him?" were proper as reply to defense counsel's argument concerning the expense of prosecution).
We do not consider this reversible error, because we are convinced from all the evidence that the conviction was proper. Additionally, this comment did not warrant the declaration of a mistrial. "A motion for a mistrial implies a miscarriage of justice and should only be granted where it is clearly manifest that justice cannot be afforded." Diamond v. State,363 So.2d 109, 112 (Ala.Crim.App. 1978). The request for a mistrial "does not serve the same function as a mere objection or motion to strike and is not ordinarily used to indicate a mere erroneous ruling of law." Diamond, supra. "A motion for a mistrial should not be granted where the prejudicial qualities of the comment can be eradicated by the action of the trial court." Nix v.State, 370 So.2d 1115, 1117 (Ala.Crim.App.), cert. denied, Exparte Nix, 370 So.2d 1119 (Ala. 1979).
In our judgment, Stokes received the fair trial to which he was entitled. Donnelly v. DeChristoforo, 416 U.S. 637,94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). The judgment of the Jefferson Circuit Court is affirmed.
AFFIRMED.
All Judges concur.