[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 552 
The appellant, Phillip Wayne Tomlin, was originally tried in 1978 for the murders of Ricky Brune and Cheryl Moore. These murders were made capital because a double murder was committed.[1] This court affirmed the appellant's conviction in 1979 but remanded the case to the trial court for correction of its sentencing order. See Tomlin v. State, 443 So.2d 47
(Ala.Cr.App. 1979). This court's judgment was later affirmed by the Alabama Supreme Court in Ex parte Tomlin, 443 So.2d 59
(Ala. 1983). The United States Supreme Court denied the appellant's request for certiorari in 1984. After the trial court submitted an amended sentencing order, the Alabama Supreme Court affirmed the appellant's conviction in Ex parteTomlin, 516 So.2d 797 (Ala. 1987). On the appellant's second request for rehearing, the Alabama Supreme Court reversed his conviction for improper comments made in the prosecutor's closing argument. Ex parte Tomlin, 540 So.2d 668 (Ala. 1988). The instant appeal results from the appellant's subsequent trial, which occurred in 1990. In that trial, the jury found the appellant guilty of the murders of Ricky Brune and Cheryl Moore and recommended a sentence of life without the possibility of parole. The trial court overrode the jury's recommendation and sentenced the appellant to death by electrocution.
Because we must reverse this case on several grounds, we will include only a brief recitation of the evidence presented at trial. The evidence tended to show that on January 1, 1977, the bodies of Ricky Brune and Cheryl Moore were discovered in an automobile on the side of interstate highway (I-65) at the Theodore-Dawes exit ramp near Mobile, Alabama. Both had been shot. Ricky Brune, a 19-year-old, had been shot once in the head above the eye and once in the neck; two shots had passed through his left arm and had entered his chest. He died as a result of trauma and hemorrhage to the body. Cheryl Moore, a 15-year-old, was shot twice. One shot entered her arm and went through to her chest. The second shot, from a shotgun, entered her back. Her cause of death was gunshot wounds to the body. Evidence established that all of the shots, except the shotgun wound on Cheryl, were from a .38 caliber gun.
Testimony established that the appellant's brother had been shot and killed in an incident involving Ricky Brune. At the time of the murders, the appellant was a resident of Houston, Texas. David Hammonds, an investigator with the Texas Department of Public Safety, stated that he was in a club in Houston, Texas, in 1976 working undercover as a narcotics officer. The appellant was present in the club at this time. Hammonds testified at trial that the appellant told him that his brother had been killed in a narcotics transaction which had gone bad, and that he was going to Mobile to take care of some family business and to kill the person who had killed his brother.
Randy and Danny Shanks testified that the appellant arrived in Mobile on January 1, 1977, and came to their trailer, which was located in Tillman's Corner, outside of Mobile. The appellant was married to the Shankses' sister. The Shankses testified *Page 553 
that the appellant was not alone when he arrived in Mobile, but that he was accompanied by an individual whom the appellant identified to them as Ron.[2] Randy Shanks testified that the appellant told him and Danny that the appellant had come to Mobile to kill Ricky Brune. The appellant wanted to borrow Danny Shanks's car the next day, so that he could leave town. Danny would not let him use his car and said that he did not want to get involved in anything. Danny and Randy rode with the appellant and Ron to a motel in Mobile where they were staying. The appellant and Ron showed the Shankses two guns — a .38 caliber and a .44 caliber. Danny also heard the appellant say something about Ron's being a "hit man." The Shankses testimony was not the only testimony that the appellant was in the Mobile area at the time of the murders. Other testimony at the appellant's trial confirmed that he was seen at a local club in Tillman's Corner at around the time of the murders. Although we reverse the judgment and remand this case, we will address issues which may arise in any subsequent proceedings.
 I
Initially, the appellant contends that the trial court erred in denying his motion for mistrial because, he argues, evidence was presented that the appellant's codefendant had been convicted of capital murder and, at the time of the trial, was on death row. The appellant maintains that this evidence violated his due process rights and that he was thereby denied a fair trial. For the following reasons, we agree.
The appellant's counsel made a motion in limine requesting that all evidence of the codefendant's conviction and sentence be withheld from the appellant's trial. When evidence of the codefendant's conviction was presented at trial, the appellant's counsel moved for a mistrial. Thus, we believe that this issue was adequately preserved for our consideration. However, even if no objection was made at trial, review in a case involving the death penalty will not be barred, because the appellate courts of this state review every conviction in such a case for plain error. See 45A, A.R.App.P. Even if no objection had been made to evidence of the codefendant's conviction, we would find plain error. See United States v.Avery, 760 F.2d 1219 (11th Cir. 1985), cert. denied,474 U.S. 1055, 106 S.Ct. 792, 88 L.Ed.2d 770 (1986).
The following occurred during the testimony of Detective Estes, with the Mobile County Sheriff's Department:
 "Q — [by Mr. Valeska] Based on your investigation of this case, is there any way physically possible in this world that Phillip Wayne Tomlin or John Ronald Daniels could [have] been at the lounge on Highway 90 in Tillman's Corner on January 2d 1978?
"A — No, sir.
"Q — Why not?
"A — They were in jail.
"Q — Charged with what?
"A — With murder.
"Q — Where is John Ronald Daniels today?
 "Mr. Madden [Defense Counsel]: Judge, I'm going to object. That's irrelevant.
 "The Court: I don't know where he's going. I overrule the objection.
 "Q — [By Mr. Valeska]: Where is John Ronald Daniels today?
 "A — He's in the penitentiary in Alabama.
"Q — Is he on death row?
"A — He is.
 "Mr. Madden: Judge, I object. Move for a mistrial. That's improper and he knows [it]. It has nothing to do with the facts of this case.
"The Court: Go ahead.
 "Mr. Madden: You're denying that motion, Judge?
"The Court: Not yet.
 "Q — [By Mr. Valeska]: Mr. Estes, from the time y'all — *Page 554 
 "The Court: Ladies and gentlemen of the jury, we're not trying John Ronald Daniels in this case. Go ahead."
The state argues in brief that the prosecutor elicited this testimony in order to correct the testimony of a witness who stated that he had seen the appellant in Mobile in 1978.[3]
However, the prosecutor's question "Is he on death row?" went beyond what it was necessary to correct the witness's testimony. "We feel that a foul blow has been struck here, one which has affected the substantial rights of the defendant and requires a new trial free of such prejudicial comments." UnitedStates v. Miranda, 593 F.2d 590, 593 (5th Cir. 1979).
In 1899, the United States Supreme Court held that evidence of a codefendant's conviction was not admissible in the trial of his fellow accused. See Kirby v. United States, 174 U.S. 47,19 S.Ct. 574, 43 L.Ed. 890 (1899). This is still the prevailing view. See Annot., 48 A.L.R.2d 1016, and cases cited therein.
 "Where two or more persons are jointly indicted for the same criminal offense which is in its nature several, or are separately indicted for such offense or for separate offenses growing out of the same circumstances, and are tried separately, the fact that one defendant has pleaded guilty or has been convicted is, as a general rule, inadmissible as against the other, since competent and satisfactory evidence against one person charged with an offense is not necessarily so against another person charged with the same offense, and since each person charged with the commission of an offense must be tried upon evidence legally tending to show his guilt or innocence."
48 A.L.R.2d at 1017. There are exceptions. "Where the common-law distinction between a principal and an abettor has not been abolished, the conviction or plea of guilty of a principal is admissible against one being tried separately as an abettor, since the principal's guilt is a prerequisite to prove the guilt of the accused." 48 A.L.R.2d at 1017, n. 1. Furthermore, evidence of a codefendant's conviction may be admissible for purposes of impeachment when the codefendant testifies at trial. However, the court should give the jury a limiting or cautionary instruction concerning the use of the conviction. See United States v. Austin, 786 F.2d 986 (10th Cir. 1986). See also Stokes v. State, 462 So.2d 964
(Ala.Cr.App. 1984). Neither of these exceptions apply in the instant case. (We note that the codefendant did not testify at appellant's trial.)
Alabama follows the majority view.[4] Judge Bowen in Stokes, supra, thoroughly reviewed the Alabama cases in which evidence of a codefendant's conviction was admitted. Judge Bowen stated:
 "A survey of the Alabama cases on this point reveals that disclosure of the outcome of a co-defendant's case has been denounced whether it occurred in argument, see Knowles v. State, 44 Ala. App. 163, 204 So.2d 506 (1967) (Prosecutor's statement that other defendants had already pled guilty). Bell v. State, 41 Ala. App. 561, 140 So.2d 295 (1962) (Prosecutor's statement that co-defendant had confessed); Lowery v. State, 21 Ala. App. 352, 108 So. 351 (1926) (District attorney's comment that one person had already been convicted); Felder v. State, 20 Ala. App. 603, 104 So. 444 (1925) (Prosecutor's comment that, "The other man had pleaded guilty"), in the State's case-in-chief, see Williams v. State, 369 So.2d 910
(Ala.Crim.App. 1979) (State's witness asked whether he testified in case when *Page 555 
co-defendant was convicted); Lane v. State, 40 Ala. App. 174, 109 So.2d 758 (1959) (State asked co-indictee the outcome of his prosecution); Evans v. State, 39 Ala. App. 498, 105 So.2d 831 (1958) (District attorney asked accomplice whether he was guilty of same offense with which defendant was charged), or during the presentation of the defense, see Dickens v. State, 49 Ala. App. 480, 273 So.2d 240 (1973) (Defendant questioned, on cross-examination, about codefendant's guilty plea); McGhee v. State, 41 Ala. App. 669, 149 So.2d 1 (1962) (Defendant sought to present evidence of co-defendant's acquittal); Hill v. State, 210 Ala. 221, 97 So. 639 (1923) (Defendant claimed his own prosecution should be barred by accomplice's acquittal)."
Stokes, 462 So.2d at 966-67. In Stokes, this court affirmed the lower court, noting that the error was "cured by the trial court's admonition to the jury to disregard the prosecutor's comment." Id. at 967.
Having determined that it was error to admit evidence of the codefendant's conviction, we now turn to the question of whether that error was cured by the trial court or was harmless error. In the instant case, the only statement made by the trial court regarding the prosecutor's comment was: "Ladies and gentlemen of the jury, we're not trying John Ronald Daniels in this case." This statement is neither a limiting instruction on the evidence nor a cautionary instruction and was not sufficient to cure the error.
Further, we cannot say that the error was harmless. Some courts have held that evidence of a codefendant's conviction may be harmless when viewed with the evidence as a whole. SeeAustin, supra; People v. Leonard, 34 Cal.3d 183, 193 Cal.Rptr. 171,666 P.2d 28 (1983). However, the courts in this state do not evaluate an error of this type using that harmless error analysis. See Ex parte Lowe, 514 So.2d 1049 (Ala. 1987). "Overwhelming evidence of guilt does not render prejudicial error harmless under Rule 45, Ala.R.App.P." Lowe,514 So.2d at 1050. The question this court must ask is whether the substantial rights of the appellant have been affected. See Rule 45, A.R.App.P. We believe that in this case this question can be answered only in the affirmative.
As the Eleventh Circuit Court of Appeals stated in UnitedStates v. McLain, 823 F.2d 1457 (11th Cir. 1987):
 "In most occasions, the admission of a co-defendant's guilty plea will substantially affect the defendant's right to a fair trial in that 'the jury may regard the issue of the remaining defendant's guilt as settled and that the trial is a mere formality.' United States v. Griffin, 778 F.2d 707, 711 (11th Cir. 1985)."
McLain, 823 F.2d at 1465. "The basic rationale underlying the holdings that this is prejudicial error is that it is irrelevant and incompetent because it infers that since the confederate was guilty the defendant must therefore be guilty . . . and violates the defendant's right to be tried on his own."State v. McCarthy, 567 S.W.2d 722, 724 (Mo.Ct.App. 1978). An accused is "entitled to have the question of his guilt determined upon the evidence against him, not on whether a codefendant or government witness has been convicted of the same charge." Miranda, 593 F.2d at 594.
Not only was the appellant's right to be tried for his own actions violated, but also the appellant's right to confront the witnesses against him was violated. As the United States Supreme Court stated in Kirby, supra:
 "One of the fundamental guarantees of life and liberty is found in the Sixth Amendment of the Constitution of the United States, which provides that 'in all criminal prosecutions the accused shall . . . be confronted with the witnesses against him.' Instead of confronting [the defendant] with witnesses to establish the vital fact that the property alleged to have been received by him had been stolen from the United States, he was confronted only with the record of another criminal prosecution, with which he had no connection and the evidence in which was not given in his presence."
Kirby, 174 U.S. at 55, 19 S.Ct. at 577.
It appears from a review of the record that the instances noted above during the *Page 556 
testimony of Detective Estes was not the only time the prosecution injected evidence of the codefendant's conviction. Each of these instances resulted in a violation of the appellant's constitutional rights. The trial court committed reversible error in denying the appellant's motion for mistrial.
 II
The appellant next argues that the prosecutor made a direct comment on his failure to testify, thus violating the appellant's constitutional right against self-incrimination. We agree.[5] The prosecutor made the following comment in his closing argument in the guilt phase of the appellant's trial:
 "But no, we're here 13 years later, and old Phil is still stuck in the mud in Houston. Y'all believe that? That's the great thing about our system. It's up to the jury. And if you believe his testimony because we couldn't make him take the stand again. And I couldn't tell you in opening statement that we could get his prior testimony in because the Judge had to rule on it. When the Judge said it could go in, I read it to you. And you know what a great guy Phil is. They told you about him in opening statement. Moved out to Houston and was doing well in a booming business. My goodness. He was into dope and whiskey as much as he could get."
The portion of the comment underlined above is clearly a direct comment on the appellant's failure to testify. An individual has a constitutional right against self-incrimination. "It is a basic principle of law that once a defendant chooses not to testify at his trial the exercise of that choice is not subject to comment by the prosecution.Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229,14 L.Ed.2d 106 (1965)." Wherry v. State, 402 So.2d 1130, 1133 (Ala.Cr.App. 1981); see also Christian v. State, 502 So.2d 868, 869
(Ala.Cr.App. 1986). "Our [Alabama] Supreme Court has made it quite clear that it will not tolerate comments by the prosecutor on the accused's privilege not to testify. The prosecutor who even inadvertently makes reference to the fact that the defendant can testify is inviting reversible error."Blackmon v. State, 462 So.2d 1057, 1060 (Ala.Cr.App. 1985).
 As our Supreme Court stated in Beecher v. State, 294 Ala. 674, 320 So.2d 727 (1975):
 ". . . [I]t is concomitantly the duty of the prosecutor not to, in any manner, comment on the failure of the defendant to testify. Thus if there exists the possibility that the prosecutor has commented in such a manner that the jury may understand it as a comment on the defendant's failure to testify, it is for the trial court to cure this violation of prosecutorial duty by prompt and vigorous instructions to the jury informing them of defendant's right not to be compelled to testify and that they may draw no presumption from his decision not to testify."
Beecher, 320 So.2d at 734-35. (Emphasis in original.) See alsoHammonds v. State, 549 So.2d 993 (Ala.Cr.App. 1989); Peoples v.State, 510 So.2d 554 (Ala.Cr.App. 1986), aff'd, 510 So.2d 574
(Ala.), cert. denied, 484 U.S. 933, 108 S.Ct. 307,98 L.Ed.2d 266 (1987); Ex parte Williams, 461 So.2d 852 (Ala. 1984).
In the instant case, no objection was made to this comment at trial. No curative instructions were given ex mero motu by the trial court. The comment on the appellant's failure to testify was prejudicial and violated the appellant's constitutional rights. See Qualls v. State, 371 So.2d 949, 950 (Ala.Cr.App.), writ denied, 371 So.2d 951 (Ala. 1979).
 III
The appellant next argues that the trial court erroneously charged the jury on the element of particularized intent. He contends that the trial court failed to instruct the jury that in order to convict him of the capital offense of double murder, the *Page 557 
appellant must have had the particularized intent to kill Cheryl Moore. We agree.
Under the accomplice liability doctrine, a nontriggerman accomplice may be convicted of the capital offense of double murder only if he had the particularized intent that both victims be killed. Cf. Kennedy v. State, 472 So.2d 1092
(Ala.Cr.App. 1984), aff'd, 472 So.2d 1106 (Ala.), cert. denied,474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985). In addition, "[t]o affirm a finding of a 'particularized intent to kill' the jury must be properly charged on the intent to kill issue." Ex parte Raines, 429 So.2d 1111, 1113 (Ala. 1982), cert. denied, 460 U.S. 1103, 103 S.Ct. 1804, 76 L.Ed.2d 368
(1983); see also Bankhead v. State, 585 So.2d 97 (Ala.Cr.App. 1989), remanded on rehearing on other grounds, 585 So.2d 112
(Ala. 1991).
In the case at hand, the trial court charged the jury, in part, as follows:
 ". . . The fourth and last basic component of the capital offense charged in Count I in the indictment is the allegation that this defendant, Phillip Wayne Tomlin, committed first degree murder of both Richard Brune and Cheryl Moore. First degree murder is more than simple killing. I will define for you first degree murder because the Defendant is not guilty of the capital offense charged in the indictment unless the State has proven beyond a reasonable doubt and to a moral certainty that he committed first degree murder of both Richard Brune and Cheryl Moore."
Taken as a whole, the trial court's charge to the jury on particularized intent was highly confusing. The jury's confusion was evidenced by the following question by a juror asked after the initial charge was given: "If I understood you correctly when you were talking earlier, am I to believe that if a person, although he maybe did not pull the trigger, takes part in a crime, he is just as guilty as the person that pulled the trigger?" The trial court replied, "That is exactly what I said." This is an obvious misstatement of the law. "[N]o defendant is guilty of a capital offense unless he had the intent to kill. . . ." Lewis v. State, 456 So.2d 413, 416
(Ala.Cr.App. 1984). See also Russaw v. State, 572 So.2d 1288
(Ala.Cr.App. 1990) (trial court reversed because oral instruction that "[a] defendant who is guilty of the crime of murder of the intentional killing type because of these principles [murder in connection with accomplice liability] has committed that crime the same as if he had personally done the killing himself" failed to instruct on particularized intent).
The trial court subsequently attempted to remedy the confusion by a verbatim reiteration of its original charge to the jury. However, this attempt was insufficient because the initial defects were not cured. The court did not make it clear to the jury that the intent to kill Richard Brune alone was not sufficient to supply the intent necessary to convict the appellant of the capital murder of Cheryl Moore. Since the trial court's charge failed to address the concept of particularized intent with reference to the capital offense of killing two individuals, or even to make a distinction between the intent elements of capital murder, felony-murder, and murder in connection with accomplice liability, seeRussaw, 572 So.2d at 1293, the substantial rights of the appellant have been adversely affected.
 IV
The appellant also claims that the trial court committed a number of evidentiary errors. First, he argues that it was error for the trial court to receive the testimony of Officer Holderrieth into evidence. Officer Holderrieth was allowed to testify over objection that in early 1975, the appellant had been arrested on suspicion of driving while intoxicated. During this arrest, two guns were confiscated from the appellant's vehicle.[6] Officer Holderrieth was further allowed to testify that he knew that the appellant had retrieved these guns *Page 558 
from the Houston Police Department. However, Officer Holderrieth stated that he had no direct knowledge that the guns in question were actually picked up by the appellant, but that he concluded that the appellant had received these weapons because his name appeared on a release form.
This entire line of questioning should have been held to be inadmissible by the trial court. The evidence concerning the appellant's prior arrest on a charge totally unrelated to the charge presently before the court should never have been received into evidence. McLemore v. State, 562 So.2d 639
(Ala.Cr.App. 1989). Accordingly, any information arising from this arrest should also have been excluded. See also C. Gamble,McElroy's Alabama Evidence § 69.01(1) (4th ed. 1991).
The appellant also challenges the correctness of allowing certain testimony concerning the bullets used in the killings. In this regard, the state's ballistics expert was asked by the prosecutor "if that weapon [the gun confiscated from the appellant in 1975] had been brought to you, could you have matched State's Exhibit 44 [the bullets used in the murders of Ricky Brune and Cheryl Moore] with that weapon?" There was no evidence presented during the course of the trial which even suggested that the weapon confiscated in 1975 was the murder weapon. In fact, evidence presented by the state clearly supports the conclusion that these were indeed two different weapons. One witness stated that the confiscated weapon was a nickel-plated Smith and Wesson, while another state's witness testified that the weapon he had seen prior to the murder was black.
In addition to the question about matching the bullets used in the crime to the confiscated gun, the prosecutor was also allowed over objection to ask an investigator in the case, "Was it ever made public that Smith and Wesson .38 type bullets were used to kill Ricky Brune or Cheryl Moore?" The state claims that this question was permissible because its ballistics expert had previously testified that the bullets could have been fired from a Smith and Wesson handgun. However, the ballistics expert actually stated that the bullets had "characteristics of a group of weapons made by Smith and Wessonor other weapons having very identical type of characteristics" (emphasis added). Furthermore, we note that the only mention at trial linking the appellant to a Smith and Wesson handgun was in the aforementioned inadmissible testimony of Officer Holderrieth.
Questions should not be framed so as to assume or suggest facts which are not supported by the evidence. White v. State,498 So.2d 396 (Ala.Cr.App. 1986). See also C. Gamble, McElroy'sAlabama Evidence § 121.06 (4th ed. 1991). The questions concerning ballistics clearly suggested facts not supported by the evidence and did not meet the criteria for any exception to the rule as stated in McElroy's Alabama Evidence § 121.06. Therefore, the prejudice to the appellant increased exponentially as the trial court erroneously permitted the prosecutor to ask each of these unsupported questions.
The appellant further argues that it was error for the trial court to allow the prosecutor, on two different occasions, to question investigators on whether they had ever suspected or found any evidence to indicate that anyone other than Phillip Wayne Tomlin killed Ricky Brune or Cheryl Moore. We, too, have serious doubts about the propriety of this line of questioning.
The general rule in Alabama is that an accused is not entitled to introduce testimony that someone else was suspected of committing the crime for which he is being tried. C. Gamble,McElroy's Alabama Evidence § 48.01(9) (4th ed. 1991). The inverse should also hold true. That is, the prosecution should also be precluded from presenting testimony that no one other than the accused was ever suspected in the crime, especially, as in this case, where such testimony was offered solely to bolster a circumstantial case.
 V
The appellant next contends that the trial court erred by allowing certain testimony from his first trial to be read *Page 559 
into the record of his second trial. The state read the testimony of Mary Daniels and Vonda Wilding into the record allegedly because these witnesses, who testified at the first trial, were not available at the time of the second trial. The appellant claims that the state failed to exercise due diligence in securing the presence of these witnesses. We disagree.
The record indicates that the state made legitimate efforts to locate both of these witnesses prior to trial. The last known address, last known employer, and the telephone records for each witness were checked in an attempt to find the witness. While more might possibly have been done by the state in this regard, the trial court did not abuse its discretion by receiving this testimony into evidence. See Nolen v. State,469 So.2d 1326 (Ala.Cr.App. 1985).
For the reasons stated above, the appellant's conviction is reversed and his sentence to death is vacated. This case is remanded to the Circuit Court for Mobile County for proceedings consistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur.
[1] "The 1975 capital punishment statute, as contained in §§ 13-11-1 through 13-11-9, was carried over intact to the new criminal code as §§ 13A-5-30 through 13A-5-38. These sections of the new criminal code were repealed, effective July 1, 1981, by the 1981 capital offense statute, but only as to conduct occurring on or after July 1, 1981. Therefore, conduct occurring before July 1, 1981, as in the present case, is governed by the pre-existing law, i.e., §§ 13A-5-30 through 13A-5-38." Ex parte Tomlin, 516 So.2d 797 (Ala. 1987), footnote 1. (The capital offense statutes are currently contained in §§13A-5-40 et seq.)
[2] John Ronald Daniels was also convicted of the murders of Ricky Brune and Cheryl Moore. At the time of the appellant's second trial, Daniels was on death row in Alabama.
[3] The murders occurred in 1977. It is clear after a review of the testimony of this witness that after 13 years the witness was confused about the dates. It appears from the record that the witness himself cured any possible misunderstanding concerning the date that he saw the appellant in Mobile, when he testified that he saw the appellant in Mobile around the time of the murders.
[4] However, some states, including Iowa, New Jersey, and Pennsylvania, have held that evidence of a codefendant's conviction is admissible at the trial of a defendant charged with the same crime. See State v. Randolph, 192 Iowa 636,185 N.W. 141 (1921); State v. Costa, 11 N.J. 239, 94 A.2d 303
(1953); Commonwealth v. Dennery, 259 Pa. 223, 102 A. 874
(1917).
[5] The appellant did not testify in his own behalf at his 1990 trial which is the subject of this appeal. However, the appellant did testify at his first trial in 1978. The transcript of his testimony in that trial was read into evidence at the appellant's trial in 1990.
[6] There was absolutely no testimony that the weapons confiscated in 1975 by Officer Holderrieth were used in the killing of Ricky Brune and Cheryl Moore. The Shankses testified at trial that prior to the murders the appellant showed them two pistols, neither of which matched the description of the confiscated weapons.